IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>vs.<br><br>DONGYAN HUANG and<br>ZHANG JIAN LONG,<br><br>    Defendants. | No. CR06-103-LRR<br><br>**REPORT AND RECOMMENDATION<br>(PARTIAL)<br>ON MOTION TO SUPPRESS** |

_____

This Report and Recommendation addresses that portion of the defendants' joint motion to suppress physical evidence (Doc. No. 9) dealing with four search warrants. The portion of their motion and its supplement (Doc. No. 43) dealing with the defendants' statements to law enforcement officers will be addressed in a subsequent Report and Recommendation, following an evidentiary hearing.

In a Superseding Indictment filed September 8, 2006, the defendants are charged with trafficking in goods containing counterfeit trademarks, in violation of 18 U.S.C. § 2320(a). The defendants have filed a motion to suppress physical evidence seized during searches of their vehicles and premises pursuant to four search warrants which the defendants argue were issued without probable cause. (Notably, although the Government has supplied copies of six search warrants, *see* Doc. Nos. 31 & 32, only four of the warrants are at issue. According to the Assistant United States Attorney, the warrants filed as Doc. Nos. 31-5 and 31-7 were not executed and will be returned as unexecuted.) The defendants have filed a brief in support of their motion (Doc. No. 39), and the plaintiff (the "Government") has resisted the motion (Doc. Nos. 31 & 32).

The court first will address the warrant issued by Chief Magistrate Judge John A. Jarvey of this court on July 5, 2006. The court then will address three warrants issued by

Magistrate Judge Audrey G. Fleissig of the United States District Court for the Eastern District of Missouri.

Warrant #1

On July 5, 2006, officers applied for a search warrant to search the following property:

> Cardboard boxes, a covered display area, a white utility trailer bearing Missouri license plate [omitted], tables, product displays and a Gray 2004 GMC Yukon bearing Missouri license plate [omitted] in the parking lot by a Mobil Gas Station located at 100 1st Ave W, Cedar Rapids, IA[.]

Doc. No. 31-2, p. 1.

The application for search warrant (Doc. No. 31-2) was accompanied by the Affidavit of ICE Special Agent Christopher S. Cantrell. Agent Cantrell stated he had observed a vendor in a parking lot near the Mobil Gas Station. He knows from his training and experience that street vendors often deal in items bearing counterfeit trademarks. He indicated ICE agents "conducted drive by surveillance and examined the items for sale," (*id.*, pp. 2-3, ¶ 5), identifying items that appeared to have counterfeit trademarks on them including the Playboy Rabbit Head Design, and NASCAR and NFL logos. Hats examined by the ICE agents bore tags indicating they had been made in China. ICE agents contacted trademark counsel for Playboy Enterprises and described cellular telephone holders and packaging the agents had seen at the vendor's stand. Based on the agents' description, Playboy's counsel indicated "the lack of holograms, trademark and licensing information were not compliant with the legitimate use of the Playboy Rabbit Head Design." (*Id.*, p. 3, ¶ 9)

Based on this information, Agent Cantrell stated he had "probable cause to believe that persons selling clothing, cellular telephone holders, handbags and other items in the parking lot . . . are trafficking in counterfeit goods in violation of Title 18 USC 2320." (*Id.*, p. 4, ¶ 10) On July 5, 2006, at 6:14 p.m., Chief Magistrate Judge John A. Jarvey

of this court found the affidavit established probable cause and issued the warrant. (Doc. No. 31-3) The warrant was executed the same day, and several hundred items bearing counterfeit trademarks were seized. (*See id.*, pp. 3-8)

The defendants argue the warrant was issued without probable cause. (*See* Doc. Nos. 9 & 39) Specifically, they argue that in his affidavit in support of the warrant application, Agent Chris Cantrell "*recklessly assumed* material facts"; made false statements reflecting bad faith; made averments of fact that were outside the scope of his training and experience; failed to include sufficient information regarding his "drive by surveillance" of the defendants' sales operation; and, generally, included information that was based on speculation and incomplete investigation. (*Id.*)

The first issue before the court is whether the defendants have made the requisite showing for a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978). Under *Franks*, the court is required to hold a hearing "where the defendant makes a *substantial* preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause[.]" 438 U.S. at 155-56, 98 S. Ct. at 2676 (emphasis added). The substantiality requirement is not easily met. *See United States v. Hiveley*, 61 F.3d 1358, 1360 (8th Cir. 1995); *United States v. Wajda*, 810 F.2d 754, 759 (8th Cir. 1987). When no proof is offered that an affiant deliberately lied or recklessly disregarded the truth, a *Franks* hearing is not required. *U.S. v. Moore*, 129 F.3d 989, 992 (8th Cir. 1997). "A mere allegation standing alone, without an offer of proof in the form of a sworn affidavit of a witness or some other reliable corroboration, is insufficient to make the difficult preliminary showing." *Id*. (citing *Franks*, 438 U.S. at 171). The defendant also must show "that the allegedly false statement was necessary to a finding of probable cause or that the alleged omission would have made it impossible to find probable cause." *United States v. Mathison*, 157 F.3d 541, 548 (8th Cir. 1998).

3

The defendants have failed to make the required "substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit." *Franks*, 438 U.S. at 155-56, 98 S. Ct. at 2676. They have included mere allegations that Agent Cantrell included false statements in his affidavit, with no evidentiary support for their allegations.

The next issue is whether Agent Cantrell's affidavit contained facts sufficient to support a finding of probable cause. The United States Supreme Court has set the standard for review of a search warrant application, as follows:

> [W]e have repeatedly said that after-the-fact scrutiny by courts of the sufficiency of an affidavit should not take the form of *de novo* review. A magistrate's "determination of probable cause should be paid great deference by reviewing courts." *Spinelli [v. United States,]* 309 U.S. [410,] 419, 89 S. Ct. [1509,] 590[, 21 L. Ed. 2d 637 (1969)]. "A grudging or negative attitude by reviewing courts toward warrants," *[United States v.] Ventresca*, 380 U.S. [102,] 108, 85 S. Ct. [741,] 745, [13 L. Ed. 2d 684 (1965)], is inconsistent with the Fourth Amendment's strong preference for searches conducted pursuant to a warrant [and] "courts should not invalidate . . . warrant[s] by interpreting affidavit[s] in a hypertechnical, rather than a commonsense, manner." *Id.*, [380 U.S.] at 109, 85 S. Ct. at 746.
>
> . . . . Reflecting this preference for the warrant process, the traditional standard for review of an issuing magistrate's probable cause determination has been that so long as the magistrate had a "substantial basis for . . . conclud[ing]" that a search would uncover evidence of wrongdoing, the Fourth Amendment requires no more. *Jones v. United States*, 362 U.S. 257, 271, 80 S. Ct. 725, 736, 4 L. Ed. 2d 697 (1960). *See United States v. Harris*, 403 U.S. 573, 577-583, 91 S. Ct. 2075, 2079-2082, 29 L. Ed. 2d 723 (1971). [FN10]
>
>> [FN10] We also have said that "Although in a particular case it may not be easy to determine when an affidavit demonstrates the existence of probable cause, the resolution of doubtful or

> marginal cases in this area should be largely determined by the preference to be accorded to warrants," *Ventresca*, *supra*, 380 U.S. at 109, 85 S. Ct. at 746. This reflects both a desire to encourage use of the warrant process by police officers and a recognition that once a warrant has been obtained, intrusion upon interests protected by the Fourth Amendment is less severe than otherwise may be the case.

*Illinois v. Gates*, 462 U.S. 213, 236-37 & n.10, 103 S. Ct. 2317 & n.10, 2331, 76 L. Ed. 2d 527 (1983).

Thus, the scope of this court's review of the search warrant in this case is limited to a determination of whether the magistrate had a "substantial basis" to issue the warrant. In conducting this review, the court is mindful that

> affidavits "are normally drafted by nonlawyers in the midst and haste of a criminal investigation. Technical requirements of elaborate specificity once exacted under common law have no proper place in this area." *Ventresca, supra*, 380 U.S. at 108, 85 S. Ct. at 745. . . . [M]any warrants are – quite properly . . . issued on the basis of nontechnical, common-sense judgment of laymen applying a standard less demanding than those used in more formal legal proceedings.

*Gates*, 462 U.S. at 235-36, 103 S. Ct. at 2331. As the Supreme Court further explained:

> The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis for . . . conclud[ing]" that probable cause existed. *Jones v. United States,* 362 U.S. [257,] 271, 80 S. Ct. [725,] 736[, 4 L. Ed. 2d 697 (1960)]. We are convinced that this flexible, easily applied standard will better achieve the accommodation of public and private interests that the Fourth Amendment requires than does [the prior legal standard].

*Gates*, 462 U.S. at 238-39, 103 S. Ct. at 2332. *See also United States v. Fulgham*, 143 F.3d 399, 400-01 (8th Cir. 1998) ("When we review the sufficiency of an affidavit supporting a search warrant, great deference is accorded the issuing judicial officer. *See United States v. Day*, 949 F.2d 973, 977 (8th Cir. 1991).").

Applying this deferential standard, the undersigned concludes Magistrate Judge Jarvey had an ample reasonable basis to conclude a fair probability existed that items bearing counterfeit trademarks would be found at the defendants' display area and in their packaging boxes and vehicles. The court further finds that even if the warrant affidavit did not contain sufficient facts to support a finding of probable cause, the officers reasonably and in good faith relied on the warrant. The officers had reasonable grounds to believe the warrant was issued properly, and they "acted in the objectively reasonable belief that their conduct did not violate the Fourth Amendment." *United States v. Leon*, 468 U.S. 897, 918, 104 S. Ct. 3405, 3418, 92 L. Ed. 2d 677 (1984).

Warrants #2, #3, and #4

Warrants #2, #3, and #4 all were issued by United States Magistrate Judge Audrey G. Fleissig of the United States District Court for the Eastern District of Missouri. All three warrant applications were supported by affidavits of ICE Special Agent Gina Andrews. Because the defendants' arguments relating to these warrants are similar, the court first will describe the three warrants, and then will address the defendants' arguments in a single discussion.

Warrant #2

On July 10, 2006, ICE agents applied for a warrant to search a residence in St. Louis, Missouri. (*See* Doc. No. 32-2-sealed) In an affidavit in support of the warrant application, ICE Special Agent Gina Andrews recited the facts leading to issuance of Warrant #1, and indicated that during the execution of Warrant #1, "ICE agents seized

6

over 100 cellular telephone holders bearing a counterfeit Playboy Bunny Head Design." (*Id.*, p. 4, ¶ 13) Agent Andrews further indicated the defendants were found at the vending location in Cedar Rapids, Iowa, selling the counterfeit items. During the search, agents had discovered correspondence addressed to the defendants bearing the St. Louis residence address; the defendants' vehicle registration contained the St. Louis residence address; and bank correspondence addressed to "Purple Crystal" also bore the St. Louis residence address. Agent Andrews stated the defendants had told officers their business was called "Purple Crystal." At the time Warrant #1 was executed, officers also found receipts for more than $45,000 worth of money orders that were purchased between November 2005 and July 2006. (Doc. No. 32-2-sealed)

Agent Andrews stated that based on her training and experience, she knew business owners often maintain business records at their places of residence. She described the St. Louis residence in detail, including the residence address, physical description, and precise location of the residence in St. Louis, Missouri. (*Id.*, p. 7, ¶ 27)

On July 10, 2006, at 2:06 p.m., Magistrate Judge Fleissig found the affidavit established probable cause to believe items relating to the defendants' operation of "Purple Crystal Corporation" would be found at the St. Louis residence, and Judge Fleissig issued the warrant. (*Id.*, p. 10)

<u>Warrant #3</u>

During the execution of Warrant #2 on July 10, 2006, at the defendants' St. Louis residence, ICE agents located documentation regarding a storage facility located in St. Louis, Missouri, that was rented to "Purple Crystal Corporation." (*See* Doc. No. 32-3-sealed, p. 9, ¶ 26) Agents therefore applied for a search warrant to search the storage facility. (Doc. No. 32-3)

In an affidavit in support of the warrant application, Agent Andrews indicated agents had confirmed with the owner of the storage facility that the unit in question was still under lease to Purple Crystal Corporation, which had leased the facility since July 1,

2004. The facility owner indicated the lease payments were current for the unit in question. Agent Andrews provided a description of the storage facility, as well as the physical address. She also noted that a white truck was parked in front of the warehouse bearing the name of "Win Far China Trading Corp.," and a Lexis/Nexis check had revealed defendant Huang was "one of the executives" of the company.

On July 11, 2006, Magistrate Judge Fleissig found the affidavit established probable cause to believe items relating to the defendants' sale of counterfeit goods would be found at the storage facility, and she issued the warrant. (*Id.*, p. 1)

Warrant #4

During the execution of Warrant #3 on July 11, 2006, at the St. Louis storage facility, ICE agents located and seized evidence "believed to be related to the sale of counterfeit consumer goods." (Doc. No. 32-4-sealed, p. 9, ¶ 29) The items included articles of clothing bearing NASCAR, NFL, and Major League Baseball logos; Tommy Hilfiger logos; and Sharpie markers. (*Id.*) During the search, Agent Andrews had noted that the white truck bearing the "Win Far China Trading Corp." name also bore the words "Purple Crystal Corp." on the passenger door. (*Id.*, p. 10, ¶ 30) Agent Andrews therefore applied for a search warrant to search the white truck. (Doc. No. 32-4-sealed)

On July 13, 2006, Magistrate Judge Fleissig found the affidavit established probable cause to believe items relating to the defendants' sale of counterfeit goods would be found in the truck, and she issued the search warrant. (*Id.*, p. 1)

The defendants argue Warrants #2, #3, and #4 (the "Missouri warrants") were issued without probable cause. They argue evidence located during the execution of Warrant #1 was insufficient to establish probable cause to justify a search of the defendants' St. Louis residence. They similarly argue discovery of documentation regarding the storage facility was insufficient to justify a search of that facility, particularly

8

because Agent Andrews does not cite any contraband or other evidence that was located at the St. Louis residence. Because the defendants believe Warrant #1 was issued without probable cause, they assert the evidence located during execution of that warrant cannot form the foundation for issuance of Warrant #2, and similarly, that Warrants #3 and #4 cannot be premised upon discovery of evidence located during execution of each of the prior warrants.

The defendants again assert that they are entitled to a *Franks* hearing, based on general allegations that the agents' affidavits contain false statements. The defendants further argue the physical evidence should be excluded pursuant to *Leon*.

For the reasons discussed above in relation to Warrant #1, the court finds the defendants have failed to make the required showing for a *Franks* hearing relating to the contents of the warrant applications and affidavits. Further, the court finds the Missouri warrants were supported by ample probable cause. The defendants were found in Cedar Rapids, Iowa, selling items bearing counterfeit trademarks. In defendant Huang's purse, agents found documentation that business and personal correspondence was being sent to the defendants at the Missouri residence, and the defendants admitted they lived at that residence. This information was adequate to support Warrant #2, for a search of the defendants' residence. Discovery that the business had rented a storage unit supported Warrant #3, and discovery of contraband in the storage unit, together with the presence of the large truck bearing the defendants' business name, supported issuance of Warrant #4. Notably, rather than over-reaching in their warrant applications, the ICE agents in this case acted with appropriate caution in returning to the court to apply for a new warrant for each successive search of the defendants' property.

The court finds all four warrants were supported by probable cause, and respectfully recommends that the defendants' motion to suppress physical evidence (Doc. No. 9) be denied insofar as the motion challenges the four warrants.

The undersigned reserves making a report and recommendation on the defendants' motion to suppress their statements to law enforcement officers.

Objections to this recommendation must be filed by **November 7, 2006**. Responses to objections, if any, must be filed by **November 10, 2006**.

**IT IS SO ORDERED.**

**DATED** this 31st day of October, 2006.

PAUL A. ZOSS
MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT